### JOHN P. JACOBSON v CONNECTICUT MUTUAL LIFE INSURANCE COMPANY.[1]

June 10, 1895.

Nos. 9403—(267).

**Contract of Agency—Commissions.**

A certain contract between the parties hereto, whereby the plaintiff was employed as the general agent of the defendant, and was to receive certain renewal commissions as a part of his compensation for his services as such agent, construed, and *held*, that he is not entitled to such commission on renewal premiums paid after the termination of his agency, by his discharge for cause.

Appeal by plaintiff from a judgment of the district court for Ramsey county, entered in pursuance of an order for judgment by Kerr, J.    Affirmed.

[1] Reported in 63 N. W. 740.

*Horace G. Stone*, for appellant.

*Davis, Kellogg & Severance*, for respondent.

START, C. J.[2]  On February 3, 1880, the plaintiff and defendant entered into a contract, whereby the plaintiff was appointed general agent of the defendant, under the instructions of its officers, for the state of Minnesota, during the pleasure of its directors for the time being, in the business of soliciting and procuring applications for life insurance, delivering policies written thereon, collecting the premiums therefor, and for renewal receipts and permits; also in appointing, supervising and controlling solicitors and subagents for procuring insurance, and in the general management of the business of life insurance for the defendant in the state.

The plaintiff, on his part, accepted such employment, and covenanted to devote his entire time and services to such business, and to do and perform each and all of the foregoing acts; and further, that all money collected or received by him for the defendant should be held by him as trust funds, and deposited and remitted as directed by the resolution of the defendant's board of directors.  He further agreed to do all other things necessary for the protection of the interests of the defendant and the successful prosecution of its business.  In consideration of such agreements on the part of the plaintiff, the defendant agreed to allow him as full and entire consideration therefor, and "so long only as he shall continue as such general agent," the following commissions upon policies, renewal receipts, and permits sent him by the defendant, viz.:  Upon policies procured by his agency, upon first premium, a commission of 25 per cent., and a commission of 10 per cent. upon each of the four succeeding renewal premiums (unless his agency be sooner terminated) upon continued premium life and endowment policies.

The contract contained other provisions as to compensation, not here material, and in 1882 the contract was modified, whereby a further commission of 5 per cent. on first premiums was to be paid to the plaintiff, making his total commission 30 per cent. on first premiums, and upon renewal premiums 10 per cent. for four years (unless his agency was sooner terminated).  In 1884 the contract

[2] Buck, J., took no part.

was further modified, which modification was completely expressed in the following terms:

"Voted, that this company will, during the pleasure of its directors, pay to its general agents the following commissions upon the premiums collected by them on policies issued upon applications procured by them on and after the first day of June, 1884, to wit: Upon whole life policies, with annual or limited premiums, a commission upon the first premium of 15 per cent., and, until further action of the directors, an additional commission on said first premium not exceeding 15 per cent., and upon the renewal premiums of such policies a commission of $7\frac{1}{2}$ per cent. Upon endowment policies, a commission upon the first premium of 10 per cent., and until further action of the directors an additional commission on said first premium not exceeding 10 per cent., and upon the renewal premiums of such policies a commission of 5 per cent. Upon single premiums and extra premiums a commission of 5 per cent."

The plaintiff accepted this modification, and continued as the general agent of the defendant until February 1, 1894, when the defendant's board of directors, for just cause, as found by the trial court, terminated his agency. Between June 1, 1884, and December 1, 1893, the plaintiff obtained insurance for the defendant on which the future total commission of $7\frac{1}{2}$ and 5 per cent. would be of the present worth of $11,194.70, and, the defendant having refused on demand to account with the plaintiff for such commission, he brought this action. Judgment for the defendant, from which the plaintiff appealed.

There is but one question in this case. Is the plaintiff, under his contract as modified, entitled to receive commissions on renewed premiums paid and to be paid after the termination of his agency? Under the express terms of the contract before it was modified, the plaintiff was to continue in the employment of the defendant only during the pleasure of its board of directors, and he was to be paid the stipulated commissions so long only as he continued to be such general agent, and was to receive the commissions on four succeeding renewal premiums, "unless his agency be sooner terminated." This would seem to leave no room for discussion or construction.

It was clearly the intention of the parties under this original contract that all right to compensation and commissions on the part of the plaintiff should cease whenever his agency should terminate for any cause.

Counsel for the plaintiff practically concedes that this is the proper construction of the original contract, but contends that by the modification the right to commissions on renewal premiums was not made to depend upon continued service. The modification must be construed with reference to all of the terms of the contract, and the purpose for which such commissions were to be paid. The manifest intention was to make the right to a commission on renewal premiums dependent upon a continuation of plaintiff's services. Such commission was not simply a part of the plaintiff's pay for securing the insurance in the first instance (which seems to be the case with commissions on first premiums), but was compensation for the other services he was required by his contract to perform in the prosecution and preservation of the defendant's business. Before the contract was modified, he was to receive this commission only on four renewal premiums, at the rate of 10 per cent., but, after the modified scale of commissions was substituted for the original scale, leaving the other terms of the contract intact, he was to receive commissions on renewals so long as his agency continued at the rate of $7\frac{1}{2}$ per cent. This is the obvious and only construction that can be given to the contract, as modified by the vote of the defendant's board of directors, which completely expressed the extent of the modification, without making a new contract for the parties. It seems to be an unequal contract, and the case one of great hardship to the plaintiff; but the plaintiff, when he entered into the contract, accepted the chances of so commending himself to the defendant by faithful and efficient services as to secure an indefinite continuance of his agency.

It is claimed by plaintiff's counsel that the letter of the defendant's president to the plaintiff which accompanied the proposed change as to his compensation indicates a purpose to modify the contract not simply as to rate of commissions, but to give the plaintiff a right to them whether he continued in the service of the defendant or not. There are statements in the letter which, standing alone, would seem to support this claim if it be conceded that the

letter, and not the action of the directors, is to control. But the whole letter is in entire harmony with the construction which we have given to the contract as modified.

It states, among other matters: "Twenty years ago this company was paying to its general agents a first commission of 15 per cent. and a renewal commission of $7\frac{1}{2}$ per cent., without other stipulation as to the duration of the renewal commission than that necessarily implied in their tenure of agency;  *  *  *  and the company received a very large amount of business yearly from its general agents,  *  *  *  all of whom felt an interest in building up as large a business as possible by reason of their expectations from it in the future, if they continued to be faithful and profitable servants of the company." This is what was meant by "men who cared for the future" in the passage quoted from the letter in the counsel's brief. Therefore, to induce the plaintiff and other agents to work for the future, it was proposed to go back to the old system, by removing the limit upon the number of renewal premiums for which a commission would be paid, and reducing the percentage to $7\frac{1}{2}$ per cent., to be paid so long as their agency should continue. If they were faithful and profitable servants, they could reasonably expect that their agency would be continued, so that they would receive a greater aggregate compensation under the modified scale of compensation than under the original one. Such proved to be the case with the plaintiff, for he was retained as such agent some ten years, during which time he received his commission upon the renewal premiums, while under the original contract he was limited to four premiums.

Whether or not, under the contract as modified, the defendant could have arbitrarily and wrongfully discharged the plaintiff, and thereby deprived him of the opportunity to receive these renewal commissions, we need not decide, as he was discharged for reasonable cause.

The construction we have given to this contract is supported by the following authorities: Stagg v. Insurance Co., 10 Wall. 589; Phœnix Ins. Co. v. Holloway, 51 Conn. 310; Spaulding v. New York Ins. Co., 61 Me. 330; North Carolina Ins. Co. v. Williams, 91 N. C. 70. The case of Hale v. Brooklyn Ins. Co., 120 N. Y. 294, 24 N. E. 317, relied upon by the plaintiff, is not in point, for in that case there was

an express contract to pay the agent regular renewal commissions on policies obtained by him when the premiums were paid to the company. The agent was employed only for one year. This was an entirely different contract than the one in the case at bar, where the right to such renewal commissions depended on the continuance of the agency.

Judgment affirmed.