## HIRSCHMANN v. BANK OF DASSEL.

Circuit Court of Appeals, Eighth Circuit.
August 8, 1927.

No. 7733.

1. **Interpleader** ⬤⇒28—**One independent claimant of fund held to have no interest in validity of assignment under which other claims.**

In an interpleader suit between two claimants of a fund, each claiming independently of the other, the validity of an assignment under which one claims is a side issue, in which the other has no interest.

2. **Insurance** ⬤⇒84(4)—**Agent appointed to represent a life insurance company held agent of the company and not of the general agent by whom he was appointed.**

Instruments and transactions relating to the appointment of an agent to represent a life insurance company considered, and such appointee *held* to be agent of the company and not of the general agent by whom he was appointed with approval of the company, and the company *held* liable directly to him for commissions on renewal premiums.

Appeal from the District Court of the United States for the District of Minnesota; Joseph W. Molyneaux, Judge.

In Equity. Suit by the Bank of Dassel against the Reserve Loan Life Insurance Company of Indiana; Hermann J. C. Hirschmann, impleaded. From the decree, Hirschmann appeals. Affirmed.

Woodlief Thomas, of Minneapolis, Minn., for appellant.

Cobb, Wheelwright, Hoke & Benson, J. B. Faegre, and Rex H. Kitts, all of Minneapolis, Minn., and W. E. Reyerson, of Howard Lake, Minn., for appellee.

Before KENYON, Circuit Judge, and JOHN B. SANBORN, District Judge.

JOHN B. SANBORN, District Judge. L. E. McGrew was, from March 30, 1922, to some time in January, 1924, a life insurance agent soliciting insurance for the Reserve Loan Life Insurance Company of Indiana in certain counties in the state of Minnesota. The compensation provided for by his contract was a commission on the first premium on each policy and commissions on renewals. On August 11, 1923, McGrew, to secure his indebtedness to the Bank of Dassel, assigned to it his renewal commissions. H. J. C. Hirschmann was the general agent of the insurance company in Minnesota during all the time that McGrew was an agent, and it was by reason of contracts made by Hirschmann with McGrew that the latter was a representative of the insurance company.

The company, after the assignment to the bank of McGrew's renewal commissions, paid to the bank $922.78 on account of such commissions, and then ceased to pay, evidently because of some controversy as to the bank's right to them. The bank brought suit against the company for an accounting of the commissions accrued and to accrue, based on the assignment. The company answered and admitted "that one L. E. McGrew was the agent of this defendant for the solication of applications for life insurance in certain counties in Minnesota under and by virtue of a certain agency contract entered into between him (the said McGrew) and Hermann J. C. Hirschmann, who was at said time the general agent of this defendant in Minnesota, and authorized by this defendant to make such agency contracts." It admitted that renewal commissions had accrued and would accrue on business written by McGrew, and that the bank held an assignment of them, but alleged that Hirschmann and others claimed the right to them, and asked that the claimants be required to interplead, and that it be permitted to pay the renewal commissions into court for the benefit of whoever the court might decide was entitled to them. Hirschmann and certain others were required to interplead, and the company was permitted to deposit the commissions, as requested by

it. Hirschmann alone filed an answer. His claim is that he, as general agent of the company, was to receive all renewal commissions; that the contract of McGrew was with him, not with the company; that under the agreement McGrew was to forfeit his right to renewal commissions if he failed to account to Hirschmann for net premiums within 60 days or failed to return premiums paid on rejected applications, or embezzled funds; that in September, 1923, McGrew did embezzle funds, so that his right to renewals was forfeited. Hirschmann, by way of a cross-bill, asks for a judgment against the bank for the $922.78 of renewal commissions paid by the company to it. The case was tried, and the court decided that McGrew was an agent for the company, that the company was obligated to pay the commissions on renewals to him, and that McGrew's assignee, the bank, was therefore entitled to them. Hirschmann appealed.

There are many assignments of error, but only two questions: (1) Does the evidence justify the court's conclusion that the bank was the assignee of McGrew's renewal commissions? (2) Does the evidence justify the conclusion that McGrew was the agent of the company and that the company was obligated to pay him the renewal commissions provided for in his contract?

[1] Hirschmann's complaint about the assignment is that the renewals claimed by the bank are those earned under the agency contract of March 6, 1923, whereas the assignment refers to renewals under a contract of March 30, 1922, which was superseded by the contract of March 6, 1923. McGrew testified that he intended to assign all his renewal commissions earned as an agent of the company, the bank was in court claiming that the assignment covered all renewal commissions, and the insurance company in its answer admitted that they had been assigned to the bank. There was no reason why the court could not give to the instrument the effect which the parties to it intended it should have. The sufficiency of the assignment has no bearing on Hirschmann's right to the commissions. It is a side issue, in which he is not interested. See Dakota Life Ins. Co. v. Midland National Bank of Minneapolis (C. C. A.) 18 F.(2d) 903.

[2] The second question is more difficult. Hirschmann's general agency contract with the company, made in 1915, authorized him "to solicit and procure by himself or by such agents as he may appoint, written applications for insurance." It provides:

"Said agent (Hirschmann) is authorized to appoint agents within the territory so specified (Minnesota), subject to the approval of said company and subject also to such directions as shall be given to said agent from the home office of said company."

Also:

"Said agent shall be responsible for all moneys collected by himself or his agents so appointed, as aforesaid, and neither said agent, nor any of his said agents, are authorized to represent said company in any manner except as in this agreement specifically set forth, or to bind said company in any manner by any promise, contract, or obligation."

"Wherever the word 'agent' is written in this contract, it shall be construed and read to mean the agent named herein and his or their agents and appointees."

"Said agent shall receive hereunder, as full compensation for himself and his agents and appointees, commission on first year's premiums, exclusive of any sum for interest which may be included therein, as follows:" (Here follows schedule of commissions.)

The clause relating to renewal commissions is this:

"Subject to the conditions herein named, renewal commissions on business written under this contract will be paid to said agent, *while in the service of said company* (italics are ours), on the net cash amount of renewal premiums received by the company, on the second Tuesday in each month following the receipt of such renewal premiums, to-wit:" (Here follows schedule of renewal commissions.)

On March 30, 1922, "H. J. C. Hirschmann, party of the first part, general agent of the Reserve Loan Life Insurance Company," first made a contract with McGrew to solicit insurance for his company in five counties in the state of Minnesota and such further territory as might be agreed on. As amended on March 31, 1922, it was approved by the company. The contract provided for a higher rate of commissions on the first premiums than Hirschmann himself was entitled to under his contract. Renewal commissions were the same as Hirschmann's, but the provision in McGrew's contract relating to them did not contain the words, "while in the service of the company." This contract was superseded by the agency contract of March 6, 1923. This latter contract recites that it is between H. J. C. Hirschmann, general agent of the Reserve Loan Life Insurance Company, and L. E. McGrew of Dassel, "hereinafter called general agent." This contract provided that the transaction of busi-

ness was to be governed by the company's rules. The territory was sixteen Minnesota counties. The authority of the agent to represent the company was limited to that specified in the contract, and was exclusive within that territory. The rates of commission on first premiums were the same as in the former contract and higher than in Hirschmann's contract. Renewal commissions were the same as in Hirschmann's contract, but the right to receive them was not limited by the words, "while in the service of the company." The contract contained these provisions:

"L. E. McGrew shall have the authority to appoint and contract with such agents as he may procure, and shall have exclusive charge and control of territory as per contract."

"Said agent is not authorized to collect any but the first year's premium. The parties hereto are not authorized by this contract to sign the name of the Reserve Loan Life Insurance Company to any receipt, agreement, document, or other paper, except receipt for first years' premiums."

"It is further understood and agreed that the said first party may offset against any claims for commissions, under this contract, any debts due or owing at any time, by said agent, to said first party." (This same clause appeared in Hirschmann's general agency contract with the company.)

"L. E. McGrew is to have sixty days for payment of note. This contract and amendment cannot be altered or changed or canceled except by mutual consent of the parties concerned."

The agreement was signed "H. J. C. Hirschmann, Gen. Agent. L. E. McGrew, Agent." Following these signatures appeared, "Approved and fulfillment of contract guaranteed. Guilford A. Deitch, Counsel, Reserve Loan Life Insurance Co., Indianapolis, Ind." It appeared from the testimony that, at or about the time this contract was executed, McGrew and Hirschmann went to the home office of the company to secure its approval, and did secure its approval by Mr. Deitch, who is the general counsel.

There was offered and received in evidence this document:

"H. J. C. Hirschmann,
"Northwestern Manager, Minnesota, North and South Dakota,
"727–729 Metropolitan Bank Bldg.,
"Minneapolis, Minn. March 28th, 1923.
"Amendment to L. E. McGrew contract dated March 6, 1923.

"In the event of the total disability of L. E. McGrew, renewals as provided in this contract dated March 6, 1923 shall be paid to him or his heirs in the event of his death.

"It is further understood and agreed that the failure of L. E. McGrew to remit the net premiums to H. J. C. Hirschmann within sixty days as provided in his contract or his failure to return moneys on applications rejected by the company or on applications not examined, shall terminate his contract. The termination of this contract dated March 6, 1923, between L. E. McGrew and H. J. C. Hirschmann, shall terminate the liability of H. J. C. Hirschmann for the payment of renewal commissions hereunder."

McGrew testified that he had no recollection of signing this amendment, although the signature looked like his. Whether he signed it or not is probably of no importance. No consideration for it is apparent. It does not purport to limit the liability of the company to pay renewal commissions if any such liability existed, and was not approved or acquiesced in by the company.

Numerous cases have been cited which relate to the liability of insurers to agents under contracts more or less similar to that under which McGrew operated, but the cases are not particularly helpful, because none of them are identical with this case, which must be decided upon its own peculiar facts and circumstances.

During all the time that McGrew was an agent for the company, the laws of Minnesota provided for two classes of insurance representatives—agents and solicitors. An insurance agent, by section 3348, General Statutes 1923, is defined "as a person acting under express authority from an insurer and on its behalf to solicit insurance, or to appoint other agents to solicit insurance, or to write and countersign policies of insurance, or to collect premiums therefor within this state, or to exercise any or all said powers when so authorized by the insurer." An insurance solicitor is defined "as a person acting under express authority from an insurance agent to solicit insurance for such agent, but without the power or authority to issue or countersign policies for the insurer of which such agent is the duly authorized representative." The section prohibits any person from acting either as agent or solicitor without a license. Section 3349 provides that an agent's license shall only be granted upon the requisition of the insurer. Section 3351 provides that an insurance agent may employ solicitors, but that the solicitors shall not represent themselves, by advertisement or otherwise, as

agents of the insurer or insurers represented by their employer, and that they shall in all instances represent themselves only as solicitors for said insurance agent.

Although the records of the insurance department were not produced to show upon whose requisition McGrew was appointed, it is very evident that he was an insurance agent and not an insurance solicitor. He is so referred to in the contract between himself and Hirschmann, and it is not possible that Hirschmann would appoint a solicitor to act in exclusive territory in the state of Minnesota, who could not represent himself to be an agent of the company for which he was soliciting applications.

There are other considerations which we think fully bear out the conclusion reached by the trial court. In the amendment dated March 31, 1922, of McGrew's contract of March 30, 1922, there was the provision: "It is agreed that, in the event of the sale of the company, or the merger of said company, the renewal commission accrued shall follow the assets of the company and become a claim against same." This is, of course, inconsistent with the theory that McGrew was looking to Hirschmann personally for payment of renewal commissions under that contract. The company's answer and the payment by it of the renewal commissions to the bank under the assignment show that it considered that McGrew was its agent. Hirschmann's letter of January 7, 1924, to McGrew, in which he wrote: "The company has written me to-day that they have canceled your contract January 5th for misuse and embezzlement of the company's funds. I am very sorry to have to write you this letter at this time"—is inconsistent with his claim that McGrew was his agent. Furthermore, as the court pointed out in his findings, it is not probable that Hirschmann would agree to pay McGrew, for writing insurance, more than Hirschmann himself was to receive from the company for it. Furthermore, Hirschmann himself, under his general agency contract, was only entitled to renewal commissions while he was with the company (Jacobson v. Connecticut Mutual Life Ins. Co., 61 Minn. 330, 63 N. W. 740; Bone v. New York Life Ins. Co., 165 Minn. 327, 206 N. W. 452), while there was no limitation on the right of McGrew to receive such commissions. It is inconceivable that Hirschmann intended to assume the liability to pay renewal commissions to McGrew even though he himself might not be entitled to receive them from the company because of the termination of his agency. We are not unmindful of Hirschmann's claim that, regardless

of the fact that there is no qualification in McGrew's contract on the right to receive renewal commissions, the law will imply one; but each contract of this kind must stand upon its own provisions, and we think that this one provides that McGrew, as compensation for the services to be performed by him under it in representing the company, shall have as his compensation the specified percentage of the first premiums and the renewal commissions provided for, and that the company is right in so construing it.

Hirschmann's position is singularly unappealing to a court of equity. He apparently left the bank in ignorance of his claim until the suit was brought. He tells of a conference before the insurance commissioner of Minnesota, apparently held early in 1925, in which the matter of the nonpayment of McGrew's renewal commissions to the bank was discussed, and at which he and Mr. Deitch, counsel for the insurance company, and Mr. Reyerson, attorney for the bank, were present. He says: "The purpose of this conference was to find out why these commissions were not paid to the Bank of Dassel, and I stated that one of the reasons was because we were waiting for matters to be straightened out between McGrew and myself, and, as soon as they were straightened out, the commissions were to be paid to the Bank of Dassel, but that was not the only reason; I claimed that, by reason of Exhibit A (McGrew's contract of March 6, 1923) and Exhibit 4 (the amendment), renewal commissions arising from McGrew's business are payable to me." He does not mean that he disclosed that claim at the conference, because he says later: "I refused to disclose the facts I had at that conference; I let the other fellows disclose, but I sat tight." The commissioner advised him to go with McGrew and others to check over McGrew's accounts. As a result, on March 30, 1925, he gave a receipt and release in full to McGrew of all indebtedness, signed "H. J. C. Hirschmann, for the Hirschmann agency of the Reserve Loan Life Ins. Co., for H. J. C. Hirschmann, and for the Reserve Loan Life Insurance Company." This receipt was given "on the condition that one W. E. Reyerson, attorney, of Howard Lake, Minn., forwards to the home office of the Reserve Loan Life Ins. Company the affidavit of the Bank of Dassel covering the Anderson, Smith, and McStotts cases, and the E. A. Erickson case at Kimball, Minn., which release is in the form of a receipt from Erickson." This condition was carried out by Mr. Reyerson. It is very evident that Hirschmann led the bank to be-

lieve that no further trouble could be had with reference to the assignment and the payment of the renewal commissions under it. This conduct of Hirschmann, to our minds, was entirely inconsistent with an honest claim or belief that McGrew was his agent and had forfeited to him the right to receive the renewal commissions from the company.

We think the trial court was entirely justified in its conclusions.

The decree is affirmed.